## Frankel Associates Inc. v. D&P General Contractors Inc.

C.P. of Montgomery County, no. 86-01672.

*Barry M. Miller,* for the plaintiff.
*William J. Brennan,* for the defendant.

NICHOLAS, *P.J.*, March 22, 1995—Plaintiff Frankel Associates Inc. has appealed to the Superior Court of Pennsylvania from our order dated December 16, 1994 by which we denied Frankel's petition to reinstate and return this case to active status after it was terminated for inactivity pursuant to Montgomery County Local Rule *406 and Pa.R.J.A. 1901.

The facts are as follows:

On January 31, 1986, Frankel filed its complaint alleging that, in late 1984, it brokered a loan between D&P Volpi General Contractors Inc. and Progress Savings and Loan Association.[1] Frankel's claim is for a broker's fee, with interest and costs.

On July 18, 1990 our order sur plaintiff's motion for sanctions was docketed. There was no further docket activity until September 8, 1992 when the Prothonotary of Montgomery County advertised the case for closing

---

1. Progress Savings was never a party in this case.

as required by Montgomery County Local Rule *406[2] and Pa.R.J.A. 1901. The prothonotary mailed notice of intent to terminate (*406 notice) to counsel of record, William J. Brennan, Esquire for defendant and Barry M. Miller, Esquire for plaintiff,[3] however, Mr. Miller did not receive the notice. No activity status certificate was filed and the prothonotary marked the case terminated on September 13, 1993.

Sometime in November of 1993, Mr. Miller learned from one Kerry Schuman[4] that the case was terminated and, on November 19, 1993, Frankel filed its petition to reinstate. On December 6, 1993, defendant Volpi filed its reply to petition to reinstate with new matter in the nature of a motion for judgment of non pros for lack of prosecution. In support of its petition to reinstate, Frankel's attorney, Barry M. Miller, Esquire was deposed

---

2. "Rule *406. *Termination of Inactive Cases.*

"(A) The prothonotary shall annually prepare a list of all civil cases commenced in which no activity appears on the docket for two years or more immediately prior thereto. He shall give notice thereof to counsel of record and to the parties for whom no appearance has been entered that said cases shall be marked terminated on the docket unless an activity status certificate is filed with the prothonotary within 30 days after service of the said notice by mail, in person or by publication on counsel of record and to those parties for whom no appearance has been entered. Said cases shall be marked terminated on the docket unless an active status certificate is filed with the prothonotary within such time. All matters so terminated may not be reinstated except with leave of court, for cause shown."

3. Frankel's complaint was filed by Henry Y. Goldman, Esquire, as attorney for plaintiff. However, Mr. Miller has been Frankel's attorney ever since April 16, 1986, when Frankel filed its notice of deposition of Progress Saving's loan officer Marlene Chismark. The prothonotary corrected the docket to show that Mr. Miller represented Frankel even though Mr. Miller never entered his appearance.

4. Nothing indicated Mr. Schuman's connection to this matter.

on February 14, 1994 and the deposition transcript was filed on February 23, 1994.

The petition, reply and deposition transcript established the following undocketed activity. Mr. Miller, in June of 1992, wanted Progress Federal to produce certain documents. He asked Mr. Brennan by letter dated June 22, 1992 for a date when they might depose the custodian of records. Sometime after the prothonotary mailed the *406 notices, Mr. Miller spoke with Mr. Brennan and scheduled the deposition for November 25, 1992. The custodian of records mailed the documents to Mr. Miller and the deposition was cancelled. Mr. Brennan wrote a letter to Miller dated November 19, 1992 requesting copies of the documents from Progress Savings. There was no other undocketed activity established.

With these facts of record, Frankel praeciped its petition to reinstate for argument on October 4, 1994. After consideration of briefs and oral argument on December 6, 1994, we denied plaintiff's petition to reinstate by order dated December 16, 1994. We did not address defendant Volpi's motion for judgment of non pros because it was rendered moot by our denial of Frankel's petition to reinstate, that is, we could not non pros a case already terminated for inactivity.

## DISCUSSION

A case properly terminated under Pa.R.J.A. 1901 and Montgomery County Local Rule *406 will not be reinstated unless the petitioner shows a compelling reason for the lack of docket activity and thereby rebuts the presumption of prejudice flowing from two years or longer of inactivity. *Streidl v. Community General Hospital,*

529 Pa. 360, 603 A.2d 1011 (1992). In *Streidl,* the Supreme Court affirmed the Superior Court's affirmance of the trial court's dismissal of a medical malpractice suit pursuant to local rule because there had been no action on the docket for more than two years. In their petition contra termination, the Streidls gave, as a reason for the delay, that they were waiting for an expert's report. The trial court concluded that this was not an appropriate explanation for the two and one-half year delay in the case and dismissed the case for lack of action. Our Supreme Court held:

"This case is governed by the companion case, *Penn Piping Inc. v. Insurance Company of North America,* 529 Pa. 350, 603 A.2d 1006 (1992), also filed this date. There we held that in order for a court to dismiss an action for lack of activity on the docket, it must be shown that (1) a party has shown a want of due diligence in failing to proceed with reasonable promptitude; (2) there is no compelling reason for the delay; (3) the delay has caused some prejudice to the adverse party, which will be presumed in all cases in which the delay is two years or longer." *Streidl v. Community General Hospital, supra* at 363, 603 A.2d at 1012.

The court concluded that "[s]ince all of the requirements of dismissal for inactivity on the docket have been met, the trial court did not abuse its discretion in dismissing the action." *Id.*

In *Pilon v. Bally Engineering Structures,* 435 Pa. Super. 227, 645 A.2d 282 (1994) the trial court terminated an action for inactivity pursuant to Berks County Rule of Judicial Administration 1901 and Pa.R.J.A. 1901. The order was affirmed by the Superior Court which found

that the plaintiff had failed to present the trial court with any compelling reason to justify the lack of activity for more than three years. The court further stated: "In cases such as this, an order terminating an action will not be reversed on appeal absent a manifest abuse of the trial court's discretion." *Id.* at 233, 645 A.2d at 285.

Here, there was no compelling reason for over three years of docket inactivity, from July 18, 1990, when our order sur plaintiff's motion for sanctions was docketed, until November 19, 1993, when plaintiff filed its petition to reinstate. The only intervening docket entries were September 8, 1992, noting that the case was advertised for closing and September 13, 1993, when the case was terminated. We determined that Frankel's undocketed discovery activity was hardly vigorous enough to excuse the delay in prosecuting this case with due diligence. "[T]he law is settled that ... it is [the] plaintiff, not [the] defendant, who bears the risk of not acting within a reasonable time [to move a case along.]" *Pennridge Electric v. Souderton School,* 419 Pa. Super. 201, 209, 615 A.2d 95, 99 (1992). One year and 11 months elapsed following the July 18, 1990 docket entry until Mr. Miller's letter dated June 22, 1992 in regard to the Progress Savings documents. The deposition of the records custodian, later obviated when the documents were mailed, was scheduled for November 25, 1992, more than two years after the last docket activity of July 18, 1990. The record fails to establish any other activity in the case thereafter to the date of termination, September 13, 1993. There was no further activity in the case until plaintiff filed its petition to reinstate on November 19, 1993.

*Martin v. Grandview Hospital,* 373 Pa. Super. 369, 541 A.2d 361 (1988) involved an appeal from an order granting plaintiff's petition to reactivate a case which

had previously been terminated for inactivity on the docket pursuant to local rule. The Superior Court noted that it has adopted an "open judgment" standard for reactivation of complaints which were terminated for unreasonable inactivity; the petitioner must show good cause why the case should be reactivated. In order to meet this "good cause" requirement, the petitioner must show that: (1) the petition for reactivation is timely filed; (2) the inactivity is reasonably explained or legitimately excused; (3) facts constituting a meritorious cause of action are alleged. The case was remanded to the trial court for consideration of the three-part "good cause" test before granting the plaintiff's petition to reactivate the case.

In its concise statement of matters complained of on appeal, Frankel contends that this court erred by failing to find that appellant demonstrated "good cause" why the case should be reactivated by proving that appellant never received actual notice of the intent to dismiss under Montgomery County Rule *406. This argument is unavailing. The trial court complies with the notice requirement when it gives at least 30 days written notice "by mail to the last address of record of the parties or their counsel of record. ..." Pa.R.J.A. 1901(c)(1). Here, the prothonotary gave notice as required by Pa.R.J.A. 1901. The prothonotary noted on the docket that the case was advertised for closing on September 8, 1992. Nothing suggested that the *406 notice was unmailed, improperly mailed or undelivered. The prothonotary marked the case terminated one year later. Frankel thus had notice of the prothonotary's intent to terminate even though the *406 notice never came to Mr. Miller's personal attention. Frankel failed to show a breakdown of the prothonotary's notice system.

In *Clinger v. Tilley*, 423 Pa. Super. 121, 620 A.2d 529 (1993) the trial court's order denying appellant's petition to reactivate was affirmed. The Superior Court held that although appellant's petition for reactivation was filed only eight days after appellant's attorney discovered that the case had been terminated, the petition was not timely because it was filed more than two and one-half years after the case was dismissed. Here, the case was actually terminated on September 13, 1993 and the petition to reinstate was filed on November 19, 1993, slightly more than two months from the date the case was terminated. Even if it may be conceded that appellant satisfied the first and the third elements of the three requirements for showing good cause, we concluded that the plaintiff failed to present a reasonable excuse or a compelling reason, as *Streidl* and *Pilon* require, for the inactivity. The single effort to obtain documents from Progress Savings in the two years following the July 18, 1990 last docket entry did not serve to demonstrate the type of diligence required to warrant reactivation of a case terminated for inactivity for over three years. Cf. *Blackburn v. Sharlock, Repcheck, Engel and Mahler*, 433 Pa. Super. 581, 584, 641 A.2d 612, 614 (1994) (stating broadly that "a claim of ongoing negotiations will not excuse delay in prosecuting an action").

For these reasons, we properly denied Frankel's petition to reinstate.

In reviewing an order denying a petition to reactivate a case terminated for inactivity, the Superior Court is limited to determining whether the trial court committed an abuse of discretion or an error of law. *Clinger v. Tilley, supra* at 123, 620 A.2d at 531. By this standard of review, the order of December 16, 1994 should be affirmed.