J-S75018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| USA FEDERAL CREDIT UNION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KATHERINE S. GARGES | |
| Appellant | No. 3422 EDA 2015 |

Appeal from the Order Entered October 9, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2005-02231

BEFORE:  BOWES, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                    **FILED OCTOBER 14, 2016**

Katherine S. Garges appeals, *pro se*, from the October 9, 2015 order of the Court of Common Pleas of Montgomery County denying with prejudice her petition to reinstate this action following termination for inactivity.  Because we conclude that Garges failed to establish good cause for reinstatement, we affirm.

In February 2005, USA Federal Credit Union ("USA") filed a breach of contract action against Garges, seeking repayment of $11,156.14 in unpaid loans.  In response, Garges filed an answer with new matter and a counterclaim, alleging that USA had engaged in unfair and deceptive debt-collection practices.  Following substantial discovery, both parties filed motions for summary judgment:  Garges on USA's complaint and her counterclaim, and USA on Garges's counterclaim.  The trial court denied Garges's summary

judgment motion on July 30, 2008 and granted USA's summary judgment motion on August 18, 2008. As a result, the only remaining claims as of August 18, 2008 were USA's claims against Garges. One year later, on August 29, 2009, Garges filed a motion to compel answers to interrogatories and production of documents, which the trial court denied on October 15, 2009.

On October 20, 2014, after five years of docket inactivity, the trial court issued a notice of proposed termination ("Termination Notice") to the parties pursuant to Montgomery County Local Rule of Judicial Administration 1901 ("Montgomery County Rule 1901"),[1] which provides in relevant part:

> (b) The Court may initiate proceedings to terminate a case in which there has been no activity of record for two years or more by serving a notice of proposed dismissal of court case.
>
> (c) The Court shall serve the notice on counsel of record, and on the parties if not represented, sixty days prior to the date of the proposed termination. The notice shall contain the date of the proposed termination and the procedure to avoid termination. . . .
>
> . . .
>
> (f) If no statement of intention to proceed has been filed in the required time period, the Prothonotary shall enter an order as of course terminating the matter with prejudice for failure to prosecute.
>
> (g) If an action has been terminated pursuant to this rule, an aggrieved party may petition the court to reinstate the action. All matters so terminated may not be reinstated except with leave of Court, for cause shown.

---

[1] Montgomery County Rule 1901 is based on Pennsylvania Rule of Judicial Administration 1901 ("Pennsylvania Rule 1901").

Mont. Co. L.R.J.A. 1901. The Termination Notice advised the parties that the trial court would terminate the case without further notice unless either party filed a statement of intention to proceed by December 20, 2014. Neither USA nor Garges filed a statement of intention to proceed. Therefore, on January 5, 2015, the trial court terminated the case.

On January 20, 2015, Garges filed a petition to reinstate the case pursuant to Montgomery County Rule 1901(g). After a hearing, the trial court denied Garges's petition, finding that Garges had waived her right to challenge the termination by failing to respond to the Termination Notice. Garges timely appealed to this Court.[2]

On appeal, Garges asserts that Montgomery County Rule 1901 does not meet the requirements of Pennsylvania Rule 1901(c), which states, under the heading "Minimum standards," that "[b]efore any order terminating a matter

_____

[2] USA asserts that this Court lacks jurisdiction because Garges failed to timely appeal from the January 5, 2015 order terminating the case. Based on our review of the trial court docket and the certified record, it appears that the trial court never entered a formal termination order. Instead, the docket includes an entry, dated January 5, 2015, stating that the case was "[t]erminated." *See* Trial Ct. Dkt. Entry No. 87. It is undisputed that both parties received notice of the January 5, 2015 docket entry terminating the case.

In any event, in terms of this Court's jurisdiction, an order denying a petition to reinstate is itself an appealable order. *See generally Setty v. Knepp*, 722 A.2d 1099 (Pa.Super. 1998); *Martin v. Grandview Hosp.*, 541 A.2d 361 (Pa.Super. 1988). Here, Garges timely filed her notice of appeal from the October 9, 2015 order on November 4, 2015. Therefore, we have jurisdiction over this appeal.

on the ground of unreasonable inactivity is entered, **the parties shall be given at least 30 days' written notice of opportunity for hearing on such proposed termination**" in person, by mail, or by publication in a legal newspaper.  Pa. R.J.A. 1901(c) (emphasis added).  Garges claims that because Montgomery County Rule 1901 does not require a pre-termination hearing, it does not satisfy the requirements of Pennsylvania Rule 1901.  We disagree.[3]

Pennsylvania Rule 1901 provides that each court of common pleas may develop its own local rule to dispose of cases that have been inactive for more than two years.  Pa. R.J.A. 1901(b)(1).  Although Pennsylvania Rule 1901(c) states that the parties should receive "30 days' written notice of **opportunity for hearing**" (emphasis added), our Court has interpreted this provision to mean that the parties must be given an opportunity to respond to the notice before termination, either orally or in writing.  ***See, e.g., Samaras v. Hartwick***, 698 A.2d 71, 72-73 (Pa.Super. 1997) (noting that local rule's notice procedure, requiring filing of "a certification of active status within 30 days" of pre-termination notice, satisfied Pennsylvania Rule 1901's "minimal procedural protections"); ***Clinger***, 620 A.2d at 531 (stating that Pennsylvania Rule 1901(c) requires trial court to provide parties with written notice in person, by mail, or by publication before terminating case); ***Taylor v. Oxford Land, Inc.***,

_____

[3] Our review of an order denying a petition to reinstate is limited to determining whether the trial court abused its discretion or committed an error of law.  ***Clinger v. Tilley***, 620 A.2d 529, 531 (Pa.Super. 1993).

488 A.2d 59, 62-63 (Pa.Super. 1985) (holding that "the clear language of [Pennsylvania] Rule 1901 requires pre-termination notice" to parties). Montgomery County Rule 1901 requires the trial court to give the parties written notice of its intent to terminate and permits the parties to respond to the notice by filing a statement of intention to proceed within 60 days. When a party files a timely statement of intention to proceed, the case will not be terminated. Because Montgomery County Rule 1901 allows the parties to respond to the pre-termination notice and thereby prevent termination, we conclude that it satisfies the requirements of Pennsylvania Rule 1901.[4]

Next, Garges asserts that the trial court abused its discretion in denying her petition to reinstate because she established good cause for reinstatement. We disagree.

In denying Garges's petition, the trial court relied on the waiver principle adopted in *Tucker v. Ellwood Quality Steels Company*, 802 A.2d 663 (Pa.Super. 2002). In *Tucker*, after more than two years of docket inactivity, the trial court issued a rule to show cause why the case should not be terminated, directing the parties to respond to the rule at "the general calling

---

[4] Moreover, the notice/response procedure outlined in Montgomery County Rule 1901 complies with newly amended Pennsylvania Rule of Civil Procedure 230.2, which also requires the filing of a statement of intention to proceed to avoid termination of an inactive case. *See* Pa. R.C.P. 230.2(b), (f) (eff. Dec. 31, 2016). However, Rule 230.2 was suspended between April 23, 2014, and December 9, 2015, and, thus, was not in effect when the trial court terminated this case or denied Garges's petition to reinstate.

of all inactive cases on October 26, 2001." *Id.* at 664. Because neither party appeared on that date, the trial court entered an order terminating the case with prejudice. *Id.* On appeal, this Court held that the appellant waived his right to challenge the termination by failing to respond to the rule to show cause. *Id.* at 666. We explained that "it would be inequitable for Appellant to be able to maintain his cause of action against Appellee. Through his failure to attend the hearing on whether his case should be terminated for inactivity, Appellant has demonstrated a manifested indifference towards the continuation of his cause of action." *Id.* (citing *Shope v. Eagle*, 710 A.2d 1104, 1107 n.13 (Pa. 1998)).[5]

Although neither *Tucker* nor *Shope* involved a petition to reinstate, the trial court applied the same waiver principle in this case, finding that Garges waived her right to challenge the termination by failing to respond to the Termination Notice. Had this appeal stemmed from a termination order, the trial court's rationale would have been proper. Garges, however, did not

_____

[5] In *Shope*, our Supreme Court considered whether the appellants' failure to respond to a notice of termination for inactivity resulted in waiver of their right to challenge the termination on appeal, stating:

> We note that Appellants preserved their right to challenge the dismissal of the action by responding to the court order directing them to appear for a hearing on whether the case should be terminated for inactivity. **Had they not done so, their right to challenge the dismissal would have been waived** . . . .

710 A.2d at 1107 n.13 (emphasis added).

appeal from a termination order. Garges appealed from the October 9, 2015 order denying her reinstatement petition, which she had the right to file under Montgomery County Rule 1901(g), notwithstanding her failure to respond to the Termination Notice.

A party seeking reinstatement of a terminated case must establish good cause to reactivate the case. **Setty**, 722 A.2d at 1101; **see** Mont. Co. L.R.J.A. 1901(g) (stating that reinstatement may be granted only "with leave of Court, for cause shown"). To establish good cause, "'[t]he aggrieved party must demonstrate that: (1) the petition for reactivation was timely filed; (2) a reasonable explanation exists for the docket inactivity; and (3) facts exist supporting a meritorious cause of action.'" **Setty**, 722 A.2d at 1101 (citation omitted); **see Samaras**, 698 A.2d at 73.[6] Notably, the good-cause test does not consider whether the party seeking reinstatement timely responded to a pre-termination notice. For this reason, the trial court's reliance on **Tucker** and **Shope** was misplaced.[7]

At the hearing on her reinstatement petition, Garges's only explanation for the lengthy period of docket inactivity was that she was "impoverished during [that] entire time, due in significant part to [USA's] actions." N.T.,

---

[6] Garges's reinstatement petition, filed 15 days after the termination, was timely.

[7] We are not bound by the trial court's rationale and may affirm on any basis. **In re Jacobs**, 15 A.3d 509, 509 n.1 (Pa.Super. 2001).

- 7 -

10/7/15, at 9; *see id.* at 11. She further stated that any delay "was entirely due to [USA's] deliberate attempts to frustrate [her] right of appeal" and that she "was not required during that period of time to do anything." *Id.* at 8. In response, the trial court explained that Garges could have taken affirmative steps to continue the litigation:

> [Y]ou're ignoring the fact that there are available, to both parties, ways to move a case along. There are innumerable mechanisms where either party can move a case along.
>
> In other words, if a plaintiff is dilatory, you can file a motion to compel them to take some action; you can ask, under our rules, for a 212 conference with the court, saying . . . order this case to trial. . . . You have the ability to do things yourself, or to file a motion to dismiss the case for lack of prosecution . . . .

*Id.* at 8-9; *see id.* at 13. However, the trial court docket shows that Garges filed nothing in the five years preceding termination. In fact, Garges admitted that USA "is the one who took the risk of not proceeding with [its] case that entire time" and that "the delay has worked in [her] favor." *Id.* at 9-10.[8]

---

[8] "The law is well settled that it is [the] plaintiff, not [the] defendant, who bears the risk of failing to act within a reasonable time to move a case along." *Pilon v. Bally Eng'g Structures*, 645 A.2d 282, 285 (Pa.Super. 1994). Given that USA deliberately abandoned its cause of action against Garges, which sought more than $11,000 in damages, it is somewhat difficult to understand why Garges would want to reactivate USA's claim. It appears that she wants the case re-opened in order to challenge the dismissal of her counterclaim.

Based on the evidence of record, we conclude that Garges failed to offer a reasonable explanation for the docket inactivity. As the trial court aptly observed:

> Had [Garges] pursued dismissal of [USA's] action through non pros, her assertion that the Counterclaim was wrongly dismissed would have been ripe for review. Instead, she opted to delay more than five years until the Prothonotary was compelled to commence termination proceedings, and then seek discretionary leave of Court to pursue a claim long-since abandoned.

Trial Ct. Op. at 5-6. Accordingly, because Garges failed to establish good cause for reinstatement, we affirm the denial of her petition to reinstate.[9]

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2016

_____

[9] In light of this disposition, we need not reach Garges's remaining claims relating to the trial court's rulings in the pre-termination litigation.